UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Henry Aube

v. Civil No. 1:25-cv-294-SE-TSM
Opinion No. 2026 DNH 138

Erin Frost, et al.

O R D E R

Henry Aube, appearing pro se, brings this action under 42 U.S.C. § 1983 against the defendants, New Hampshire State Police (NHSP) Troopers Erin Frost, Conor Davis, Daniel Livingstone, and NHSP Sargeant Megan Walsh, in their individual capacities. He alleges violations of the Fourth Amendment's prohibition of unreasonable searches and seizures and malicious prosecution, and the Fourteenth Amendment's substantive due process guarantees. Doc. no. 12. The defendants move to dismiss Aube's amended complaint. Doc. no. 14. For the reasons explained below, the court grants the motion in part and denies it in part.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d

77, 81 (1st Cir. 2013). To test a complaint's sufficiency, the court must employ a two-step approach. First, it must identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (alterations omitted) (quoting Iqbal, 556 U.S. at 678). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations. See id. Only then can the court determine whether the "combined allegations, taken as true, . . . state a plausible, not a merely conceivable, case for relief." Id. (quotation omitted). The court liberally construes Aube's pleadings in light of his pro se status. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## Background[1]

On December 4, 2022, NHSP officers responded to a reported domestic disturbance involving Aube and another individual, Jamie Bennett, at Aube's home in Andover, New Hampshire. During the officers' investigation, Bennett stated that she was uncertain whether Aube possessed any firearms at the time. The officers did not record footage on their body worn cameras (BWC) during their investigation.

Two days later, on December 6, 2022, the police obtained a warrant to arrest Aube for misdemeanor Domestic Violence, Simple Assault. The next day, on December 7, NHSP officers stopped Aube while he was driving in Andover and arrested him. After the arrest, Trooper Frost, Trooper Davis, and Sargeant Walsh remained with Aube's car. Before having the car towed, the

[1] The following facts are as alleged in Aube's amended complaint.

officers conducted an inventory search. Dash camera footage[2] shows the officers prying up the trunk lining, searching concealed compartments, and unfolding and reading a document found in the trunk. Between the interior trunk panels and the frame of the vehicle, Trooper Davis located a single spent rifle shell casing. This was the only item the defendants seized during their search. Footage from the search shows Trooper Frost filling out paperwork. In alleged violation of NHSP policy, the defendants did not complete an inventory form for the search.

Later that night, Trooper Davis applied for a nighttime search warrant for Aube's home. Aube's amended complaint alleges that Trooper Davis's affidavit in support of the warrant relied almost exclusively on the shell casing found in Aube's car. Aube also alleges that Trooper Davis's affidavit contained several material misrepresentations that are not related to the shell casing. First, it falsely stated that Bennett had told the police that Aube possessed firearms, when she really said she was uncertain. Second, it relied in part on an unverified anonymous tip from months prior. Third, it discussed a May 2022 domestic violence arrest leading to bail conditions prohibiting Aube to possess firearms, but it omitted that the case was placed on file without a finding. Further, the temporary firearm restriction from that case was no longer in effect, and no other court order prohibited Aube from possessing firearms. A New Hampshire judge authorized the search warrant.

At around 9:00 p.m. that night, officers including Trooper Davis, Trooper Livingstone, and Sargeant Walsh executed the warrant at Aube's home. Upon entering, they unplugged Aube's home security camera system. The officers searched the home, and Trooper Davis

[2] Although Aube submitted a "body worn camera file list" as an exhibit to his original complaint, doc. no. 1-6, he did not submit any video footage with his original or amended complaints. He alleges that the video footage shows certain actions by the officers, and the court accepts those allegations as true at this stage of the litigation.

claimed he found a small quantity of cocaine and methamphetamine in a bedroom dresser drawer. Although Trooper Davis was wearing a BWC, it did not record footage of his discovery of the drugs. Some officers admitted to muting their BWC during the search. The officers left the home in disarray and did not restore the security system or secure the premises before leaving. While Aube was in custody, third parties entered his home and stole irreplaceable family heirlooms.

After the search, the state charged Aube with felony drug possession and held him in pretrial detention for two nights. Once released under pretrial supervision, a court required Aube to wear an ankle monitor, adhere to a curfew, and submit to regular urine testing. After Aube complied with these conditions for five months, his pretrial officer recommended that the court end supervision, and the court agreed. On February 23, 2024, Aube filed a motion to suppress all evidence seized from his vehicle and home. Without responding to the motion to suppress, the state nolle prossed both the domestic violence and drug possession charges against Aube. Aube alleges that, because of these events, he lost his job of ten years, had property stolen from his home, faced reputational harm in his community, and suffered severe emotional distress including anxiety and depression.

## Discussion

Aube alleges in Count I that Trooper Frost, Trooper Davis and Sargeant Walsh violated the Fourth Amendment when they conducted unreasonable searches of his car and his home. In Count II, he alleges that Trooper Frost, Trooper Davis, Trooper Livingstone, and Sargeant Walsh violated his Fourteenth Amendment substantive due process rights when they disabled his home security system, failed to record or preserve BWC footage, and left his home unsecured. In

Count III, he alleges that Trooper Frost, Trooper Davis, Trooper Livingstone, and Sargeant Walsh initiated criminal proceedings against him and caused him to be detained without probable cause, in violation of his rights under the Fourth Amendment.[3] The defendants move to dismiss all claims.[4] Doc. no. 14. Aube objects. Doc. no. 15.

## I. Search Of Aube's Car

Aube first claims that the defendants violated his Fourth Amendment rights by conducting a warrantless search of his vehicle without consent or probable cause. "Inventory searches, carried out routinely in accordance with a standardized policy setting out reasonable criteria, are reasonable searches under the Fourth Amendment, notwithstanding the absence of a warrant." United States v. Wilson, No. 18-CR-180-1-SM, 2019 WL 6717864, at *4 (D.N.H. Dec.

---

[3] The amended complaint states that Aube's claim for malicious prosecution arises under the Fourth and Fourteenth Amendments. The substantive due process clause of the Fourteenth Amendment does not provide a constitutional right to be free of malicious prosecution. Freeman v. Town of Hudson, 714 F.3d 29, 41 (1st Cir. 2013). To the extent that he seeks to allege his claim as a procedural due process violation, he cannot do so because New Hampshire law provides an adequate state law remedy for malicious prosecution. See Perez–Ruiz v. Crespo–Guillen, 25 F.3d 40, 43 (1st Cir. 1994) (procedural due process claim for malicious prosecution unavailable where an adequate remedy is available under state law).

[4] The defendants moved to dismiss Aube's original complaint before he filed his amended complaint. See doc. no. 9. In their instant motion to dismiss, the defendants attempt to incorporate by reference arguments made in their motion to dismiss the original complaint. That practice is improper and confusing. Aube, too, improperly references in his objection documents attached to his original complaint but not attached to his amended complaint. The court has nonetheless considered all of the arguments the parties intended to make. The court further considers documents attached to Aube's complaint to the extent that they aid its analysis. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (recognizing that, in deciding a motion to dismiss, courts may consider documents attached to the complaint or incorporated by reference into the complaint, as well as documents central to the complaint).

10, 2019) (citations omitted). Aube argues that the search was not a valid inventory search.[5] He alleges that the "absence of any inventory documentation and the nature of the actions [of police] captured on video are inconsistent with a routine administrative vehicle inventory." Doc. no. 12 at 4. Aube alleges that, although dash camera footage shows Trooper Frost filling out paperwork during the search, "[d]espite the requirements of [NHSP] policy, no NHSP Vehicle Inventory Form was completed or produced." Id. at 3-4. Beyond that allegation, the complaint does not incorporate or attach the policy or specifically allege how the search of Aube's vehicle was inconsistent with the policy's requirements. It is clear from the complaint, however, that Aube takes issue with how deeply the defendants searched his vehicle. Specifically, he alleges that dash camera footage shows Trooper Davis "prying up the trunk lining and padding to look inside concealed compartments" and Sargeant Walsh "unfolding and reading a private document." Id. at 3. Further, Trooper Davis found a shell casing, the sole item the defendants seized, "between the interior truck [*sic*] panels and the frame of the vehicle." Id. at 4.

The defendants argue that the warrantless search was reasonable under the "inventory exception." They argue that the failure to complete an inventory form does not itself exclude a search from the inventory exception. They further contend that Aube has not alleged any facts showing that the search exceeded the scope of a proper inventory search or violated NHSP policy aside from the failure to complete the inventory form.

"An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." United States v. Vick, 145 F.4th 191, 202 (1st

[5] Aube does not challenge the defendants' decision to impound his vehicle, only the propriety of the inventory search. Therefore, the court does not analyze the decision to impound.

Cir. 2025) (quoting Whren v. United States, 517 U.S. 806, 811 n.1 (1996)). "To prevent the exception from swallowing the warrant requirement, however, the U.S. Supreme Court has made clear that officers must conduct inventory searches consistent with established procedures for the exception to apply." Id. at 203 (citing S. Dakota v. Opperman, 428 U.S. 364, 374-75 (1976)). The First Circuit has "explained that officers' deviation from a standardized inventory search policy calls into question whether they were acting in their community caretaking role or for an impermissible, solely investigatory purpose." Id. Thus, certain circumstances permit courts to inquire into the subjective intent of law enforcement officers to ensure that they acted "in good faith, . . . and not as part of a ruse to investigate." Id. (internal quotation marks and citations omitted). The First Circuit has suggested that those circumstances arise when the officers' deviation from the policy is material, although it has not fleshed out the standard for deciding whether a policy departure is material. See id. at 203-04.

The defendants are not entitled to dismissal of Aube's claim based on the search of his car because the court cannot determine from the complaint the parameters of NHSP's inventory policy. Without the policy, the court cannot decide whether the defendant deviated from the policy or whether any alleged deviation from that policy was material. Moreover, the court cannot decide whether NHSP's inventory policy "states legitimate, non-investigatory purposes" that would have permitted the defendants' alleged acts of prying up the trunk lining, looking inside concealed compartments, and searching between the interior trunk panels and the frame of the vehicle. See United States v. Sylvester, 993 F.3d 16, 25 (1st Cir. 2021) (citations omitted).

The court agrees with the defendants that their failure to complete an inventory form is unlikely to amount to a material deviation from policy. See, e.g., United States v. Trullo, 790 F.2d 205, 206 (1st Cir. 1986) ("We will not hold that the officer's failure, technically, to follow

the inventory form procedures for valuables meant it was not an inventory search."); United States v. Garay, 938 F.3d 1108, 1112 (9th Cir. 2019) ("That the officer did not complete the inventory list that ordinarily would be completed as part of a department inventory search is not, on its own, a material deviation from policy."). But without a policy to reference, the court cannot conclude that the failure to fill out the form in this specific instance, combined with the depth of the defendants' search of Aube's trunk, was not a material deviation from that policy.

Because the court cannot determine the boundaries of the controlling policy at this stage, the defendants' motion to dismiss Aube's Fourth Amendment claim based on the search of his car is denied.

## II. Search Of Aube's Home

Aube alleges that because the defendants obtained the warrant to search his home based largely on the shell casing seized from his car, the search of his home was illegal as fruit of the poisonous tree. He further alleges that the affidavit in support of the warrant, sworn by Trooper Davis, contained material misrepresentations and omissions. Specifically, the affidavit: (1) stated that Bennett said yes when police asked if Aube had firearms, but in fact she said she did not know; (2) relied on a "stale, unverified, and anonymous tip from over three months prior"; and (3) omitted that no court order prohibited Aube from possessing firearms, because the restriction from an earlier domestic violence case was no longer in effect. Doc. no. 12 at 4. The defendants argue that they are entitled to dismissal because the search of Aube's home was pursuant to a valid warrant supported by probable cause.

In assessing the validity of the warrant, the court first addresses Aube's claim that the warrant to search his home was issued based on evidence obtained from the allegedly illegal

search of his car. When evidence obtained through an illegal search either prompted police to seek a warrant or undergirded a judge's decision to issue one, the fruits of the search authorized by the warrant are inadmissible against the defendant in a criminal case. See United States v. Royle, 86 F.4th 462, 468 (1st Cir. 2023). Several courts have held, however, that the fruit of the poisonous tree doctrine, which is an extension of the exclusionary rule, "cannot appropriately be applied in the context of § 1983 claims." See, e.g., Campbell v. Casey, 166 F. Supp. 3d 144, 151 (D. Mass. 2016). That is because "the doctrine is a remedial mechanism designed to deter future unlawful police conduct and to protect liberty by creating an incentive—avoidance of the suppression of illegally seized evidence—for state actors to respect the constitutional rights of suspects." Id. (alteration omitted) (quoting Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999)). Applying the doctrine to give rise to civil liability in the context of § 1983 claims would "vastly overdeter state actors." Campbell, 166 F. Supp. 3d at 151 (quoting Townes, 176 F.3d at 146); see also Pagan-Gonzalez v. Moreno, 919 F.3d 582, 601 (1st Cir. 2019) (citing with approval Townes's holding that "victims of unreasonable searches or seizures . . . cannot be compensated for injuries that result from the discovery of incriminating evidence and consequent criminal prosecution" (alteration omitted) (quoting Townes, 176 F.3d at 148)). The court agrees with the authorities cited above and therefore concludes that Aube cannot recover for the search of his home solely on the basis that the warrant relied on evidence that might be inadmissible against him in a criminal case.

Aube also seeks to recover for the search of his home on the basis that Trooper Davis made reckless and material misrepresentations and omissions in his affidavit in support of the

search warrant.[6] The First Circuit has held that "[a]n officer who obtains a warrant through material false statements which result in an unconstitutional search may be held personally liable for his actions under § 1983." Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998). Under Franks v. Delaware, 438 U.S. 154, 171-72 (1978), "the use of false statements to obtain a warrant, where the false statements are necessary to the finding of probable cause" and were made with at least "reckless disregard for the truth on the part of the affiant," "violates the Fourth Amendment's warrant requirement." Aponte Matos, 135 F.3d at 187. Aube has adequately alleged that Trooper Davis, in his affidavit in support of the warrant to search Aube's home for firearms, submitted material falsities to the judge "in reckless disregard, with a high degree of awareness of the probable falsity" of his statements. See Burke v. Town Of Walpole, 405 F.3d 66, 81 (1st Cir. 2005) (alteration and quotations omitted).

The court notes that neither the parties nor the documents appended to the complaint suggest that Aube used a firearm during the interaction with Bennett that precipitated his December 7, 2022 arrest for Domestic Violence Simple Assault. Consequently, it does not appear that the defendants could reasonably consider a firearm as evidence in that case. And yet, Trooper Davis sought and received a warrant to search Aube's home for weapons. In this

---

[6] The Supporting Affidavit for Search Warrant signed by Trooper Davis that is attached to Aube's original complaint appears to be in support of a warrant for the search of Aube's residence for "evidence of a violation of the New Hampshire Controlled Drug Act," which police sought after they found drugs in Aube's home while searching it for firearms pursuant to a prior warrant. Doc. no. 1-1 at 16. Trooper Davis's affidavit in support of the initial warrant to search Aube's home, which would have necessarily not contained any statements regarding the subsequent discovery of drugs in the home, is not attached to Aube's complaint. However, the documents that are attached to Aube's complaint do not contradict Aube's allegations as to the substance of that missing affidavit. As such, the court accepts as true Aube's allegations regarding the content of Trooper Davis's initial affidavit for the purpose of resolving the defendants' motion to dismiss.

context, Aube's allegation that Trooper Davis omitted from his affidavit that the temporary firearms restriction from an earlier domestic violence case against Aube was no longer in effect, such that no apparent court order prohibited Aube from possessing firearms at the relevant time, is potentially problematic. [7] An "intentional or reckless omission of material exculpatory facts from information presented to a magistrate may . . . amount to a Fourth Amendment violation." Burke, 405 F.3d at 81. For allegedly material omissions, "recklessness may be inferred where the omitted information was critical to the probable cause determination." Id. To determine the materiality of misrepresentations and omissions, courts "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id. at 82 (quotation omitted).

Here, drawing all reasonable inferences in Aube's favor, the alleged omission may have been critical and material to the judge's finding that there was probable cause to believe there was evidence of a crime in Aube's home. As alleged, the warrant application was predicated almost entirely on the shell casing police found in Aube's car, so it appears that the judge, in issuing the warrant, assumed that Aube was prohibited from possessing firearms. But if there was no such court order in place, then it was likely not a crime for Aube to have guns, so the shell casing seized from his car would not establish probable cause that there was evidence of a crime in his home. And if the only crime the troopers were investigating when initially applying

[7] Trooper Davis's affidavit in support of the warrant to search Aube's home for drugs, which the record suggests is an amended version of Trooper Davis's earlier affidavit in support of the warrant to search for firearms (which is absent from the record), discusses several prior contacts between Aube and law enforcement related to alleged acts of domestic violence against Bennett. The affidavit states that following Aube's arrest for domestic violence in May 2022, "per bail conditions set, [Aube] was to relinquish firearms pending trial." Doc. no. 1-1 at 14. The affidavit omits, however, whether that order remained in effect at the time of the relevant events in December 2022.

for the search warrant was Domestic Violence Simple Assault, which did not involve a firearm, "any reasonable person would know that a judge would want to know" that no court order restricted Aube from having guns. Burke, 405 F.3d at 82 (quoting Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000)). So, Trooper Davis's recklessness could be inferred on these facts. Id.

Aube also alleges that Trooper Davis misrepresented Bennett's statements to the police. Aube specifically alleges that Trooper Davis "falsely stated that Bennett had said 'yes' when asked if Aube had firearms, when in fact she had stated she did not know and was uncertain." Doc. no. 12 at 4. Indeed, in a Gerstein Probable Cause Affidavit attached to Aube's complaint, Trooper Kevin McGregor recorded his interview with Bennett as follows: "At first she said she did not know [if Aube had any firearms]. Then Bennett confirmed that he either had firearms or could get them easily. She stated that [Aube] had his guns taken after the last incident but didn't know if he had any more." Doc. no. 1-1 at 8.

Aside from the fact that Aube has alleged that he was legally permitted to possess firearms, the affirmative statement Trooper Davis allegedly attributed to Bennett is somewhat inconsistent with the more qualified statement McGregor recorded. But when the faulty statement by Trooper Davis is "excised" from the affidavit allegedly presented to the judge, probable cause to search Aube's home for firearms remains based on the shell casing seized from his car. See Burke, 405 F.3d at 82. This analysis is entirely academic, however, if Aube ultimately proves that he was legally permitted to possess firearms at the time of Trooper Davis's affidavit. Further, Aube complains that the affidavit relied in part on an unverified anonymous tip from months prior, but this fact may also be immaterial to the judge's finding of probable cause given that police had seized a spent shell casing from Aube's car, which would establish probable cause that Aube possessed firearms (again, assuming that such possession was in

violation of a court order). Thus, Aube does not have a Franks claim based on Trooper Davis's alleged misrepresentation of Bennett's statements or reliance on an unverified anonymous tip, alone, because neither statement would be material to the judge's probable cause finding.

In sum, Aube cannot bring a § 1983 claim challenging the warrant to search his home as fruit of the poisonous tree. Aube has, however, plausibly alleged a Franks violation based on Trooper Davis's omission of the fact that no court order prohibited Aube from possessing firearms, but not based on Trooper Davis's misstatement of Bennett's statements or reliance on an unverified anonymous tip. Because Aube has plausibly alleged a material and reckless omission under Franks, the defendants' motion to dismiss his Fourth Amendment claim challenging the initial warrant to search Aube's home is denied.[8]

## III. Malicious Prosecution

With regard to his malicious prosecution claim, Aube alleges that the defendants prosecuted him for drug possession without probable cause despite knowing that the charge rested on illegally obtained evidence. He further alleges that the criminal proceedings resolved in his favor, and that the defendants acted with malice "demonstrated by their use of a pretextual search, their material misrepresentations in the warrant affidavit, and their deliberate efforts to conceal their conduct by disabling and muting recording devices." Doc. no. 12 at 8. The defendants argue that the drug possession charges were supported by probable cause, so Aube cannot maintain a malicious prosecution claim.

[8] Because the amended complaint does not contain any allegations connecting Aube's Franks claim to Sargeant Walsh or Trooper Frost, the claim survives only against Trooper Davis.

"To make out a federal Fourth Amendment malicious prosecution claim, [a plaintiff] must show that 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor.'" Charron v. Cnty. of York, 49 F.4th 608, 618 (1st Cir. 2022). Here, Aube alleges that "Davis claimed to have found a small quantity of cocaine and methamphetamine in a bedroom dresser drawer" during the search of Aube's home. Doc. no. 12 at 5. He further alleges that "[a]s a result of the evidence seized from his home, [he] was charged with felony drug possession." Id. Because the defendants seized illegal substances from Aube's home and no evidence undercuts the inference that those substances belonged to him, the defendants had probable cause to charge Aube with drug possession, so his malicious prosecution claim fails. See Scrocca v. Alton Police Dep't, No. CIV. 1:08-CV-0042-JL, 2009 WL 2246753, at *5 (D.N.H. July 28, 2009) ("A party has probable cause to initiate . . . criminal proceedings if it has knowledge of facts that would lead a person of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the accused has committed a . . . crime." (internal quotation marks omitted)). Although Aube alleges that Trooper Davis merely "claimed" to have found drugs, he makes no allegation that the defendants fabricated evidence against him or otherwise lacked probable cause to charge him with drug possession after finding drugs in his home.

Aube attempts to derive a lack of probable cause to charge him with drug possession from his contention that the search of his home was illegal. But as the court has already explained, the fruit of the poisonous tree doctrine cannot give rise to civil liability, and the weight of authority suggests that this rule applies to claims for malicious prosecution in violation of the Fourth Amendment brought under § 1983. See Townes, 176 F.3d at 145 ("The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes's conviction

and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions."); Macdonald v. Town of Eastham, 946 F. Supp. 2d 235, 244 (D. Mass. 2013) (reasoning, in the context of a common law malicious prosecution claim, that "even if there were a constitutional infirmity in the officers' initial decision to enter Macdonald's home, it would not vitiate the probable cause to arrest and prosecute Macdonald based on [the] discovery" of marijuana plants in the home (citing Townes, 176 F.3d at 149)); Pagan-Gonzalez, 919 F.3d at 601-02 (recognizing, in granting qualified immunity on a Bivens claim for malicious prosecution in violation of the Fourth Amendment, "[t]he widespread view that probable cause to arrest or prosecute may be established in civil proceedings with unlawfully seized evidence").

Because Aube's allegations show that the defendants had probable cause to believe that he possessed illegal drugs based on the discovery of methamphetamine and cocaine in his home, his malicious prosecution claim fails, even though the defendants obtained the incriminating evidence through an allegedly unlawful search.

## IV. Due Process

Lastly, Aube alleges that the defendants' conduct in searching his home, "including deliberately disabling his home security system, failing to record or preserve their own BWC footage of critical events, and leaving his home unsecured," "was undertaken in bad faith, served no legitimate law enforcement purpose, and was so egregious and outrageous that it shocks the contemporary conscience." Doc. no. 12 at 7. The defendants contend that Aube's substantive due process claim must be dismissed because his allegations indicate negligence at most, so fall short of the high "shocks the conscience" standard applicable to such claims.

The Fourteenth Amendment's substantive due process provision "functions to protect individuals from particularly offensive actions on the part of government officials." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006). It is not, however, a vehicle for constitutionalizing tort law such that liability follows wherever a state actor causes harm. See id. Consequently, the challenged conduct must be "so egregious as to shock the conscience" and it must deprive the plaintiff of "a protected interest in life, liberty, or property." Id. Crucially, "negligent conduct is 'categorically beneath the threshold of constitutional due process,' while 'behavior at the other end of the culpability spectrum,' i.e., 'conduct intended to injure in some way unjustifiable by any government interest,' is most likely to support a substantive due process claim." Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

First, Aube's allegation that the defendants failed to record or preserve BWC footage of their search is insufficient to make out a plausible due process violation. Although the Due Process Clause, as interpreted by the Supreme Court in Brady v. Maryland, 373 U.S. 83 (1963), requires the government to disclose to a criminal defendant material exculpatory evidence, the Court held in Arizona v. Youngblood that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988). Thus, whether Aube seeks to vindicate his right to the preservation of evidence, he must make a showing of bad faith. District courts that have considered the issue have repeatedly held that the "mere failure to activate body cameras in violation of department policy does not itself establish the bad faith that is essential to a due process violation." See Kissinger-Stankevitz v. Town of Tappahannock, 750 F. Supp. 3d 590, 619 (E.D. Va. 2024); see also United States v. Taylor, 312 F. Supp. 3d 170, 178 (D.D.C. 2018)

(collecting cases); United States v. Tillard, No. 18-CR-6091-FPG, 2020 WL 57198, at *5 (W.D.N.Y. Jan. 6, 2020). The court follows these persuasive authorities in concluding that Aube's allegation that the defendants merely did not record BWC footage that, hypothetically, could have preserved evidence of their own misconduct does not show the bad faith required to sustain this sort of due process claim. In any event, Aube has not alleged that he sustained any damages from the absence of BWC footage because the state nolle prossed the drug possession charge, so he never needed the footage to defend his case.

Second, Aube's allegation that the defendants deliberately disabled his home security system does not give rise to a due process claim. Aube alleges only that the defendants "deliberately unplugged" his security system, not that the defendants permanently damaged his personal property. Doc. no. 12 at 5. And Aube cannot claim that the defendants deprived him of any property interest he possessed in the footage yet to be recorded, because the defendants simply stopped the camera system from recording new footage but did not destroy any footage already recorded. See United States v. Butt, No. 18-CR-00087 (NSR), 2019 WL 479117, at *9 (S.D.N.Y. Feb. 7, 2019) (noting the "distinction between preventing the creation of potentially exculpatory evidence and the intentional destruction or manipulation of existing evidence" in rejecting the defendant's claim that the FBI violated his Fourth and Fifth Amendment rights by disabling his home security cameras prior to searching the home (emphasis in original omitted)). Further, although Aube claims, like the defendant in Butt, that "potentially exculpatory evidence was prevented from being created," this "argument is . . . too tenuous to reach the level of being so outrageous that it 'shocks the [conscience].'" Id. at *11.

Third, Aube's allegation that the defendants failed to secure his residence while he was in custody, thus allowing third parties to steal irreplaceable family heirlooms, shows mere

negligence by the defendants, not conscience-shocking conduct. See, e.g., Cohen v. City of Portland, 110 F.4th 400, 405 (1st Cir. 2024) ("[I]t is well-settled that 'mere negligence [is] insufficient to maintain a claim of substantive due process violation.'"). While the theft of Aube's property is regrettable, his alleges only that third parties caused him harm enabled by the defendants' negligent failure to secure his residence. See Turner v. Dellapia, 498 F. Supp. 3d 500, 510-12 (S.D.N.Y. 2020) (rejecting, on a motion to dismiss, a plaintiff's claim that agents' alleged act of leaving his apartment door unlocked after a search—thereby exposing him to theft by third parties—violated due process). Likewise, the defendants' alleged act of leaving the home in disarray after their search does not rise to the level of a constitutional violation. Courts have held that police may cause ordinary disarray while completing a search so long as it does not become "unnecessarily destructive," to violate the Fourth Amendment, or "conscience-shocking," for the purposes of a due process analysis. See Cook v. Gibbons, 308 F. App'x 24, 31-32 (8th Cir. 2009) (collecting cases); see also, e.g., Parker v. Fantasia, 425 F. Supp. 3d 171, 189 (S.D.N.Y. 2019) ("[T]here must be allegations that more than ordinary disarray and damage incident to the execution of the warrant occurred." (quotations omitted)).

Aube has accordingly failed to allege any viable due process claim arising from the challenged acts of the defendants. His due process claim is dismissed.[9]

[9] Aube requests, to the extent that the court concludes that his "allegations about the manner of the search, property damage, or related conduct are more properly analyzed under the Fourth Amendment," that the court construe these claims under the Fourth Amendment or grant leave to amend. Doc. no. 15 at 5. The court concludes, however, that the Due Process Clause was the best vehicle for most of Aube's claims, even though they ultimately fail as a matter of law. See Turner, 498 F. Supp. 3d at 510 & n.10 (rejecting Fourth Amendment and due process claims based on agents' alleged failure to secure the plaintiff's property but stating that any such claim "would arise, if at all, under [the Due Process Clause]"); Taylor, 312 F. Supp. 3d at 178 (collecting cases analyzing body camera claims under a due process framework); Butt, 2019 WL 479117, at *9 (rejecting the defendant's claim that the FBI violated his Fourth and Fifth

Conclusion

For the foregoing reasons, the defendants' motion to dismiss Aube's amended complaint is granted as to Aube's claims for malicious prosecution (Count III) and violation of his substantive due process rights (Count II) and denied as to his claims challenging the allegedly unreasonable searches of his car and home (Count I).

SO ORDERED.

Samantha D. Elliott
United States District Judge

September 28, 2026

cc: Counsel of record.

Amendment rights by disabling his home security cameras prior to searching the home). But see Cook, 308 F. App'x at 31-32 (stating that claims of property damage or disarray caused by a search arise under the Fourth Amendment but also rejecting such claims under a due process theory). To the extent that any of Aube's due process allegations are more properly styled as Fourth Amendment claims, those claims would also fail as a matter of law based on the cases cited.